Shows *v.* State.

[73 South. 729, Division B.]

Criminal Law. *Continuance.*

Where accused was indicted for having carnal knowledge of a previously chaste female younger than himself, and was released on his agreement to marry her, and he procured a marriage

license, and went to his home in an adjoining county, a considerable distance from where the court was being held, and all of his witnesses were released from their subpœna under the agreement of marriage, and he was arrested in less than 24 hours after his release, upon the report of the father of the girl that accused had not executed his agreement and that he (the father) believed accused was attempting to get a continuance of the case without executing his agreement and accused was put on trial immediately without a single witness and before he had an opportunity to obtain counsel. In such case it was reversible error to refuse accused request for sufficient time to prepare a formal application for a continuance of the trial to a later day of the term, since it did not appear that accused declined to execute the agreement or that he was acting in bad faith and the fact that the day of his trial was the last day in which the judge intended to devote to criminal business though not the last day of the term was immaterial.

APPEAL from the circuit court of Jones county.

HON. PAUL B. JOHNSON, Judge.

Otho Shows was convicted of having carnal knowledge of a previously chaste female person and appeals.

Section 1081 of the Code of 1906 provides that:

"Any person who shall seduce or have illicit connection with any female child under the age of eighteen years, of previous chaste character, shall, upon conviction, be imprisoned in the penitentiary not more than ten years; but the testimony of the female seduced alone shall not be sufficient for conviction."

Chapter 171 of the Laws of 1914 provides:

"That any male person who shall have carnal knowledge of any unmarried female person of previous chaste character younger than himself, and over twelve and under eighteen years of age, upon conviction shall be punished either by a fine not exceeding five hundred dollars or by imprisonment in the county jail not longer than six months, or by both such fine and imprisonment or by imprisonment in the penititatry not exceeding five years; and such punishment within said limitation, shall be fixed by the jury trying each case. In the trial of all cases under . . . this act, it shall

be presumed that the female was previously of chaste character, and the burden shall be upon the defendant to show that she was not; but no person shall be convicted upon the uncorroborated testimony of the injured female.''

The material portion of the indictment against appellant is in the following language:

''That Otho Shows on the 28th day of March, 1914, in Forrest county aforesaid, then and there being an unmarried man, did then and there unlawfully, willfully, and feloniously seduce and have illicit, sexual intercourse with one Lola Styron, an unmarried female child under the age of eighteen years, and being of the age of fourteen years, and of previous chaste character, the said Otho Shows being a male person and older than the said Lola Styron, his exact age being to the grand jurors unknown, against the peace and dignity of the state of Mississippi.''

Whatever doubt may exist as to whether this was intended as an indictment under section 1081 of the Code or chapter 171, Laws of 1914, the record shows that the district attorney regarded the crime as that defined by the last-named statute and, upon the conviction, had the jury to fix the punishment. The jury in convicting appellant fixed the punishment at three years in the state penitentiary, and from this conviction and the judgment based thereon appellant appeals. The record shows that the defendant and his father and the prosecutrix and both her parents met with the district and county attorneys at the courthouse on Monday of the week the trial was had and during the regular term of the circuit court and discussed a settlement of the trouble. The girl who claims to have been outraged was, according to the proof, only sixteen years of age and had given birth to a child. Appellant while protesting that he was not the father of the child, reluctantly agreed to marry the girl in settlement of the trouble. The two families agreed that this

should be done and requested the district attorney to *nolle prosequi* the case on condition that appellant should marry the prosecutrix. Appellant, with reluctance, agreed, and for this purpose secured a marriage license, whereupon all parties and witnesses left the court. The prosecution was had before the circuit court of Forrest county sitting at Hattiesburg, while appellant was a resident of the adjoining county of Jones. Tuesday afternoon, less than twenty-four hours after the agreement for the marriage of the parties was entered into, the father of the girl reported to the court that the defendant had not executed his agreement, and he (the father) believed the defendant was attempting to get a continuance of the case without executing his agreement to marry his girl. Upon this *ex parte* report of the father of the girl the court directed a special officer to go after the defendant in Jones county and return him to court immediately. A special officer thereupon secured an automobile and pursued the defendant and returned him to court at Hattiesburg Wednesday morning. The case was thereupon called, and the defendant was put to trial without counsel or witnesses. When the case was called, a Mr. Pierce, member of the bar, made request in open court that time be granted the defendant to make a formal application for continuance, stating to the court that the defendant was not ready for trial at that time; that the defendant thought the case would be continued for the term; that the defendant was there without counsel and without a single witness, and was not prepared to go to trial at that time; that the defendant would not insist upon a continuance for the term, but would like to make an application to have his case set for another day of the term in order that his witnesses might be produced; that all the witnesses had been subpœnæd, but had been released under the agreement of marriage aforesaid. At this time a definite contract of employment had not been consum-

mated with Mr. Pierce to represent the defendant, the statement being made by Mr. Pierce to the court that the defendant "only spoke to me a few minutes ago." The representation made to the court on behalf of the defendant was that:

"It is not his desire or purpose to indefinitely postpone the case, but he would like time to make a showing as to why he is not ready to go to trial at this time. . . . My request is simply that the case be postponed long enough to give us an opportunity to make a showing as to why he is not ready for trial."

Thereupon the court announced:

"Your request is overruled. . . . The court, from the facts that are before the court, thinks substantial justice in this case would be that this little girl and the state of Mississippi have this case tried at this term of the court, this being the last day of the court, and unless the case is tried substantial justice is not done in the opinion of the court. For these reasons I am going to overrule the request of the lawyer, Mr. Pierce, to have the case delayed."

The record shows that the case was peremptorily called for trial and the application for the time in which to make a formal written motion for a continuance was on Wednesday, not the last day provided by law for the term, but a day which the trial judge fixed as the last day he intended to try any criminal cases. The defendant was then put to trial without assistance of counsel or of witnesses and attempted to conduct his own defense.

*D. W. Draughon*, for appellant.

*Ross A. Collins*, Attorney-General, for the state.

STEVENS, J., delivered the opinion of the court.

The refusal to grant the defendant sufficient time in which to prepare a formal application asking that

the trial be had at a later day of the term was, under the facts and circumstances disclosed by this record, manifest error. The defendant and his witnesses had been released Monday afternoon or night under an agreement that the case would be dismissed or passed to the files on condition that the defendant should marry the prosecutrix. The defendant was a resident of Jones county and his home a considerable distance from the county site of Forrest county where court was being held. It is shown that a marriage license had been issued but not used. It is impossible to determine from this record whether the defendant declined to execute the agreement, or whether he had sufficient excuse why the agreement had not been executed by Wednesday morning, the time when he was peremptorily put to trial without counsel or witnesses. He made due request of the court for sufficient time to prepare written application that the case be continued to a later day of the term—not an absolute continuance for the term—and this the court declined to grant. He was not permitted to state in writing his reasons for a continuance, but was put to trial without a single witness and before he had an opportunity to engage other counsel. In this condition of the record, counsel for the state cannot be heard to say there was no sufficient showing for a continuance. The record discloses that the defendant and his witnesses were released from further attendance upon the court until the marriage of the parties could be celebrated, and it seems to us that if this marriage, approved by the two families and the state's attorneys, was to settle the entire controversy, then there ought not to be a "military" wedding; but there should have been granted a sufficient time in which the rites of matrimony could be celebrated deliberately, decently, and orderly. It may be that appellant was not dealing in good faith, but this we cannot anticipate. He stands as a prisoner at the bar and should not be con-

demned without a fair and impartial hearing. We therefore do not think that the defendant was accorded that fair and impartial trial contemplated by the law of the land. The fact that this was the last day the court intended to devote to the trial of criminal cases should not militate against the interest of the accused. It was not in fact the last day of the term. It. is unnecessary for us to comment upon any other assignment.

*Reversed and remanded.*